STATE OF HAWAI'I, Plaintiff-Appellee,
v.
LAYTON KANE, Defendant-Appellant.
No. 28678
Intermediate Court of Appeals of Hawaii.
March 25, 2009
On the briefs:
Tae Won Kim for Defendant-Appellant
James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff-Appellee.

MEMORANDUM OPINION
RECKTENWALD, Chief Judge, NAKAMURA, and LEONARD, JJ.
Defendant-Appellant Layton Kane (Kane) appeals from the Judgment filed on July 11, 2007, in the Circuit Court of the First Circuit (circuit court).[1] Following a jury trial, Kane was found guilty of Promoting a Dangerous Drug in the Second Degree, in violation of Hawaii Revised Statutes (HRS) § 712-1242(1) (c) (Supp. 2004).[2] The circuit court sentenced Kane to a term of imprisonment of ten years.
On appeal, Kane contends that he was denied effective assistance of counsel because his trial counsel: 1) failed to file either a pre-trial motion to suppress Kane's identification or a motion challenging the identification procedure; 2) stipulated to the chain of custody on the drugs and failed to subpoena relevant witnesses; 3) failed to call for a mistrial or seek replacement of a juror who thought he may have recognized Kane; 4) failed to a) object to the prosecutor's leading questions, b) "score points" during cross-examination, c) adequately prepare for the trial, d) object to the jury instructions, and e) object to prejudicial remarks made by the prosecutor during closing argument; and 5) opened the door for the prosecutor to ask questions about Officer Okamoto on redirect examination. For the reasons set forth below, we conclude that Kane's arguments are without merit and affirm the circuit court's Judgment.

I.
On December 15, 2 0 05, Honolulu Police Department (HPD) Officer James Ferrell, while working in an undercover capacity, was approached at Fort Street Mall by a man who asked if Officer Ferrell needed or wanted anything. Officer Ferrell asked the man if he had any "Ox," street vernacular for Oxycodone, a prescription drug. In response, the man sold Officer Ferrell five blue pills.
After purchasing the pills. Officer Ferrell left the scene and turned the pills over to Officer Joseph Hanawahine, who had been on surveillance and had observed the transaction from a distance. Officer Hanawahine submitted the pills to the HPD evidence room, and the pills were later analyzed and found to contain Oxycodone.
Officer Ferrell's encounter with the man who sold the pills lasted about two minutes, and Officer Ferrell got "a good look" at the man. Officer Ferrell described the man as being in the range of approximately five feet eight inches to five feet ten inches in height, 190 to 2 00 pounds in weight, and having a muscular build, dark complexion, and numerous tattoos on his arms, legs, upper chest, and neck.
About an hour or two after the transaction. Officer Ferrell was shown two photographs of different men by Officer Paul Okamoto, and Officer Ferrell identified Kane as the man who had sold him the "Ox" pills. The police did not immediately arrest Kane to avoid compromising Officer Ferrell's undercover work. Kane was eventually arrested about two months later by Officer Hanawahine.

II.
We apply the following standard when reviewing claims of ineffective assistance of counsel:
When reviewing a claim of ineffective assistance of counsel, this court looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.
State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (internal quotation marks, citations, and footnote omitted). "General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry. Specific actions or omissions alleged to be error but which had an obvious tactical basis for benefitting the defendant's case will not be subject to further scrutiny." Briones v. State, 74 Haw. 442, 462-63, 848 P.2d 966, 976 (1993). "[M]atters presumably within the judgment of counsel, like trial strategy, will rarely be second-guessed by judicial hindsight." State v. Richie, 88 Hawai'i 19, 39-40, 960 P.2d 1227, 1247-48 (1998) (internal quotation marks and citation omitted).

III.

A.
Kane asserts that his trial counsel was ineffective for failing to file a pre-trial motion to suppress Kane's identification or a motion challenging the identification procedure. Kane provides no valid basis for this court to conclude that Officer Ferrell's identification of Kane was unreliable, and thus Kane fails to show that he would have prevailed had his trial counsel moved to suppress Kane's identification. See State v. Mitake, 64 Haw. 217, 220, 638 P.2d 324, 327 (1981) ("[I]dentification evidence will be admissible where under the totality of circumstances the identification was reliable even though the confrontation procedure was suggestive." (internal quotation marks and citation omitted)); see also State v. Araki, 82 Hawai'i 474, 485, 923 P.2d 891, 902 (1996) (concluding that even if the identification procedure, a two-person line-up conducted in front of a video store, was unduly suggestive, the witness's identification of the defendant was nonetheless sufficiently reliable); Manson v. Brathwaite, 432 U.S. 98, 114-17 (1977).
The record supports the view that Officer Ferrell's identification of Kane was sufficiently reliable to be admissible. Officer Ferrell testified that during the hand-to-hand drug transaction, he was sitting right next to the perpetrator for two minutes and was able to get "a good look" at the perpetrator. Within one or two hours of the transaction. Officer Ferrell identified Kane's picture as the person who had sold him the drugs. Officer Ferrell's description of the perpetrator largely matched Kane's appearance, including the officer's description of the perpetrator as having numerous tattoos on his arms, legs, chest, and neck.[3]
Kane has not shown that he was entitled to suppress Officer Ferrell's identification. Accordingly, Kane has failed to meet his burden of establishing that trial counsel's failure to file a motion to suppress or challenge Officer Ferrell's identification of Kane resulted in the withdrawal or substantial impairment of a potentially meritorious defense.

B.
Kane argues that his trial counsel provided ineffective assistance in stipulating to the chain of custody on the Oxycodone pills and contends that trial counsel should have called witnesses regarding the chain of custody. Kane also questions why Officer Okamoto, who presented the two photographs (including that of Kane) to Officer Ferrell, was not called by trial counsel as a witness.
We conclude that Kane has failed to demonstrate that his trial counsel provided ineffective assistance on these grounds. Kane provides no basis for believing that had the prosecution been required to establish the chain of custody, it would have been unable to do so. Kane's claim is therefore a bald assertion that because the prosecution must establish the chain of custody to admit seized drugs in evidence, it is per se ineffective assistance for defense counsel to stipulate to the chain of custody. Kane cites no authority for this claim, and we reject it.
Kane's theory of defense was mistaken identitythat he was not the man who sold the Oxycodone to Officer Ferrell. Given the defense theory, stipulating to the chain of custody was a reasonable strategic decision. See Richie, 88 Hawai'i at 39-40, 960 P.2d at 1247-48. Stipulating to the chain of custody by the defense is not an unusual occurrence. Where certain matters are not in dispute, evidentiary stipulations promote judicial economy and focus the jury's attention on the critical evidence. Indeed, the chain-of-custody stipulation allowed Kane to "portray an air of candor" to the jury by agreeing with undisputed evidence that was not a part of his defense. State v. Davis, 880 N.E.2d 31, 80 (Ohio 2008); see Reed v. State, 875 So.2d 415, 432-33 (Fla. 2004) (holding that defense counsel's stipulation to the chain of custody regarding the prosecution's physical evidence did not constitute ineffective assistance of counsel). For the same reasons, we conclude that trial counsel's decision not to call the chain-of-custody witnesses did not constitute ineffective assistance.
Although Kane suggests that his trial counsel was ineffective for failing to call Officer Okamura, Kane provides no evidence of what favorable testimony Officer Okamura could have offered. Thus, his claim related to Officer Okamura must fail. See Richie, 88 Hawai'i at 39, 960 P.2d at 1247 ("Ineffective assistance of counsel claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses.").

C.
We reject Kane's claim that his trial counsel was ineffective for failing to seek a mistrial or replacement of a juror who thought he may have recognized Kane as a high school classmate. Further inquiry by the circuit court revealed that the juror was mistaken. The juror went to school on Oahu while Kane grew up on the Big Island, and the juror was four years older than Kane. In any event, the juror, after disclosing his possible recognition of Kane, stated that he could be fair to both the prosecution and the defense. Under these circumstances, trial counsel had no valid basis for seeking to remove the juror or for a mistrial.

D.
Kane asserts that his trial counsel failed to adequately prepare for trial. In support of this claim, Kane blames trial counsel for allowing Kane to testify about his financial and domestic problems. Kane's claim is based on the following exchange between Kane and trial counsel:
Q: [Trial Counsel] And after the mortuary was closed down, did you work any more after that in that field?
A: [Kane] I tried to gain relation with competitors there, never worked out. I did landscaping. And I couldn't find myself moving on with life as far as being financially stable. So I came back here to Oahu, and I was going through some problems as far as personal domestic life. And I'm grateful that it's no longer a problem.
Kane's argument is without merit. First, Kane's references to his financial and domestic problems were not directly responsive to trial counsel's question and thus it is difficult to assign any blame to trial counsel for Kane's answer. Second, Kane's references to his financial and domestic problems were vague and rather innocuous, and we fail to see how they resulted in any substantial prejudice to Kane.

E.
We reject Kane's contention that trial counsel was ineffective in failing to object to the prosecutor's remarks in closing argument which suggested that Kane had lied and exaggerated his testimony to avoid conviction. The prosecutor's remarks were permissible. See State v. Clark, 83 Hawai'i 289, 304-05, 926 P.2d 194, 209-10 (1996) (citing State v. Abeyta, 901 P. 2d 164, 177-78 (N.M. 1995) ("Where the evidence presents two conflicting versions of the same events, `a party may reasonably infer, and thus, argue, that the other side is lying.'" (citations omitted))); State v. Apilando, 79 Hawai'i 128, 142, 900 P.2d 135, 149 (1995) (holding that it was not improper for the prosecutor to comment that because the defendant had the highest stake in the outcome of the case, he had the greatest motive to lie). Accordingly, trial counsel did not render ineffective assistance in failing to object to the prosecutor's remarks.

F.
We reject Kane's remaining claims that his trial counsel was ineffective 1) for failing to a) object to the prosecutor's leading questions, b) "score points" during crossexamination, and c) object to the jury instructions and 2) for opening the door to permit the prosecutor to ask questions about Officer Okamoto on redirect examination. Kane has waived these claims by failing to provide any discernable argument to support them. See Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived."); State v. Moore, 82 Hawai'i 202, 206 n.l, 921 P.2d 122, 124 n.l (1996) (concluding that it is the prerogative of the appellate court to disregard any claim for which the appellant presents no discernable argument). In any event, Kane has failed to meet his burden of establishing that any of these alleged errors of trial counsel resulted in the withdrawal or substantial impairment of a potentially meritorious defense.

IV.
We affirm the Judgment entered by the circuit court on July 11, 2007.
NOTES
[1] The Honorable Michael A. Town presided over the proceedings relevant to this appeal.
[2] At the time of the charged offense, HRS § 712-1242 (1) (c) provided as follows:

(1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
. . .
(c) Distributes any dangerous drug in any amount, except for methamphetamine as provided in section 712-1240.6.
[3] Kane testified at trial that he had tattoos on his arms, chest, neck, and legs, and he displayed a few of them to the jury.